IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROYAL TRAVEL, INC., ET AL., | ) | CIVIL NO. 08-00314 JMS-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHELL MANAGEMENT HAWAII, | ) | |
| INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY
ATTORNEY J. CHARLES BLANTON AS COUNSEL
FOR PLAINTIFFS AND TO REVOKE HIS _PRO HAC VICE_**

On January 30, 2009, Defendants Shell Management Hawaii

Inc. ("Shell"), Robert H. Evans, Bill Matthews, Marianna G.

Miller, Penny Ennor, Lawrence Herman, Chuck Krause, and

John Morgan, individually and as directors of the Keauhou Gardens

I Association of Apartment Owners ("AOAO"), and Cynthia Dutra,[1]

individually and as Agent for Shell and General Manager for the

AOAO (collectively "Defendants") filed the instant Motion to

Disqualify Attorney J. Charles Blanton as Counsel for Plaintiffs

and to Revoke His _Pro Hac Vice_ ("Motion").  Plaintiffs Royal

Travel, Inc. ("Royal Travel"), Paul Varacalli and

Sandra Varacalli, husband and wife, Palmer Vaughn and

Toni Vaughn, husband and wife, and Hawaii Dream Condos LLC

---

[1] Cynthia Dutra was mistakenly identified in the Complaint
as Cintia Dutra.

(collectively "Plaintiffs") filed their memorandum in opposition on February 17, 2009, and Defendants filed their reply on February 25, 2009.  This matter came on for hearing on March 9, 2009.  Appearing on behalf of Defendants were Lindalee Farm, Esq., and Audrey Yap, Esq., and appearing on behalf of Plaintiffs were Gary Grimmer, Esq., and J. Charles Blanton, Esq..  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

On December 3, 2008, Plaintiffs filed their Amended Complaint in the instant diversity action.  Plaintiffs are full-time residential unit owners in Keauhou Gardens I ("the Project") and members of the AOAO.  Plaintiffs contest the manner in which Defendants performed, or failed to perform, various changes and maintenance to the Keauhou Gardens I.  Plaintiffs also allege various procedural violations regarding voting, loan authorization, and adoption of house rules.

Mr. Blanton was admitted pro hac vice as Plaintiff's counsel on July 7, 2008, along with Phillip Oberrecht, Esq., another attorney from Mr. Blanton's law firm.  In the instant Motion, Defendants allege that Mr. Blanton is the president of Royal Travel, which he and his wife formed in 1980.  [Motion, Decl. of Lindalee K. Farm ("Farm Decl."), Exh. B (Articles of

2

Incorporation), Exh. C (Annual Report, filed Dec. 11, 2008).]
According to its Articles of Incorporation, Royal Travel is a
travel service business, and its operations include the
acquisition of real and personal property in the United States
and elsewhere.  Defendants state that Mr. Blanton has owned and
regularly rented out a unit in Keauhou Gardens I since 1994.
Defendants argue that this is contrary to Mr. Blanton's statement
in his application for admission pro hac vice that he is not
regularly engaged in business, professional, or law-related
activities in Hawaii.  Pursuant to Local Rule 83.1, an attorney
who regularly engages in business, professional, or law-related
activities in Hawaii is not eligible for admission pro hac vice.

        Further, Mr. Blanton is on the Board of Directors of
the Keauhou Gardens I AOAO.  He is one of only two current Board
members who were not named as defendants in this case.  [Motion,
Decl. of Lawrence Herman ("Herman Decl.") at ¶¶ 2-3.]  Defendants
argue that, in his capacity as a Board member, Mr. Blanton
witnessed and participated in many of the events, meetings, and
decisions that are at issue in this case.  [Id. at ¶¶ 4-5, Exh. G
to Herman Decl. (Minutes of 4/14/08 Annual Meeting), Exh. H
(Minutes of 4/15/08 Board Meeting).]  Defendants therefore argue
that Mr. Blanton should be disqualified as Plaintiffs' counsel
because he is a necessary witness regarding material, contested
issues.

Defendants argue that attorneys practicing in this district are governed by the Hawaii Rules of Professional Conduct and that a violation of these standards is grounds for disqualification.  Defendants contend that Mr. Blanton's representation of Plaintiffs violates Rule 3.7(a) of the Hawaii Rules of Professional Conduct because he is a necessary witness and none of the exceptions apply.  Plaintiffs and Defendants have already identified Mr. Blanton as a witness.  [Exh. E to Farm Decl. (Pltfs.' Initial Disclosures dated 12/10/08); Exh. F to Farm Decl. (Defs.' Initial Disclosures dated 1/6/09).]  For example, at the April 14, 2008 annual AOAO meeting, he personally introduced a number of resolutions that are at issue in this case.  He also participated in the discussion of and voting on the resolutions.

Defendants argue that Plaintiffs will not suffer a substantial hardship if Mr. Blanton is disqualified.  The instant case is in its early stages and Plaintiffs will be adequately represented by their other counsel.

In their memorandum in opposition, Plaintiffs state that Keauhou Gardens I was originally developed to have 112 residential units.  Now, however, there are forty-four full-time residential units and sixty-eight timeshare units.  The administration of Keauhou Gardens I was originally vested in the AOAO, which has its own Board of Directors and is governed by

4

Articles of Incorporation, Declaration of Horizontal Property
Regime, and Bylaws.  All aspects of the timeshare units are
governed by the Kona Coast Resort Owners Association's ("IOA")[2]
Articles of Incorporation, Declaration of Covenants, Conditions
and Restrictions, and Bylaws.  The IOA has its own Board of
Directors.  The IOA Board can vote the percentage interest of any
interval unit unless the majority of the interval owners for that
unit decide otherwise.  Thus, the IOA Board can decide virtually
all IOA matters.  Timeshare owners are automatically members of
both the AOAO and the IOA.  Beginning in the 1990's, two or three
timeshare owners were elected to the AOAO Board.

Shell manages both the timeshare interests and the
Project as a whole.  [Exhs. 1-3 to Mem. in Opp.]  In 1996, all of
the timeshare members of the AOAO Board were employees of Shell,
or Shell-related entities.  Mr. Blanton was elected to the AOAO
Board in 1996 and he noted that Shell was not performing pursuant
to certain provisions of its agreement to manage the Project.  In
1998, he obtained proxies from timeshare members of the AOAO and
attempted to exercise them to support certain candidates for the
Board at the annual meeting.  Shell rejected his proxies.
Mr. Blanton left the AOAO Board that year.

Plaintiffs argue that Shell took action to gain control

_____

[2] The timeshare interests are called "intervals".  Each
timeshare unit is divided into intervals of fifty one weeks, with
each week having a 1/51% interest in the unit.

over the AOAO Board.  Shell, through the IOA members of the AOAO

Board, asserted that the IOA Board, or its designee, could vote

all the percentage interests of the timeshare units as a block in

the AOAO Board.  The president of the AOAO at the time did not

contest this and Shell, through the IOA, effectively took control

of the election of the AOAO Board and all its actions.

Plaintiffs argue that, while the block voting of timeshare

interests is allowed in the IOA Board, it is not authorized in

the AOAO Board.  This voting practice has effectively excluded

Plaintiffs and other full-time residential owners from all

decision making regarding the Project.  The full-time residential

owners therefore have not been able to halt the changes to the

Project at issue in this case.

Plaintiffs argue that an understanding of the history

of the Project is essential to the case and this Motion.  They

agree that Mr. Oberrecht and local counsel, Mr. Grimmer, are

excellent attorneys, but they argue that being deprived of

Mr. Blanton's services at this stage in the case will be an undue

hardship to them.  Plaintiffs state that Mr. Blanton is on the

island of Hawaii until April 27, 2009 and is the only counsel who

can take depositions and examine records at the general manager's

office without having to travel to the island of Hawaii.

Plaintiffs also state that Royal Travel has never

engaged in the functions of a travel agency.  It is only a

6

vehicle to hold title to real property as part of an estate
planning program.  Mr. Blanton is now a minority shareholder in
Royal Travel and its only activity in Hawaii is to rent a unit in
Keauhou Gardens I through an independent rental agent.  Thus,
Mr. Blanton never considered his connection with Royal Travel to
constitute doing business in Hawaii.  Plaintiffs argue that to
find that this is doing business in Hawaii would be an unduly
restrictive interpretation of Local Rule 83.1.

        Plaintiffs recognize that, as a prior and current
member of the AOAO Board and the president of Royal Travel,
Mr. Blanton is a potential witness.  Plaintiffs, however, argue
that he is not a necessary witness.  Further, if he becomes a
witness, it will not be until trial, which is currently set for
December 1, 2009.  If the matter proceeds to trial, Mr. Blanton
will voluntarily withdraw as counsel as of November 20, 2009.
Plaintiffs argue that Defendants do not cite any way that they
are prejudiced by Mr. Blanton's representation of Plaintiffs in
these early stages of the action.  Thus, the substantial hardship
to Plaintiffs should outweigh any prejudice to Defendants.

        Plaintiffs note that the rule prohibiting counsel from
serving as a witness was designed to avoid juror confusion.  The
instant case, however, will have a non-jury trial.  The district
judge will not have any problems distinguishing between
Mr. Blanton's roles as witness and counsel.

7

In their reply, Defendants first argue that the Court should disregard the factual allegations in Plaintiffs' memorandum in opposition because Plaintiffs did not provide a supporting declaration or affidavit. Defendants argue that Plaintiffs have the burden of proving substantial hardship from Mr. Blanton's disqualification and Plaintiffs have failed to do so. The only possible hardship is the increased costs of using alternate counsel, but this does not constitute substantial hardship. Further, the loss of Mr. Blanton's special knowledge about the case is not a substantial hardship because, if it were, no attorney could ever be disqualified. Examples of substantial hardship include the loss of the attorney's specialized legal expertise or longstanding participation in discovery. Plaintiffs only claim that Mr. Blanton has unique factual knowledge. If disqualified as counsel, Mr. Blanton can still use this knowledge as a witness and a client representative. Further, insofar as Plaintiffs knew that Mr. Blanton could be called as a witness, they could have prevented any hardship by not retaining him as counsel of record in the first place.

Defendants argue that they will be prejudiced by Mr. Blanton's representation of Plaintiffs, even at these early stages. Plaintiffs may argue that he is entitled to privileges not normally accorded fact witnesses, including the work product doctrine and attorney-client privilege. As counsel, Mr. Blanton

may attend all depositions, whereas most fact witnesses are not allowed to be present at other witnesses' depositions. Mr. Blanton's multiple roles also will make it difficult to distinguish what documents or information is privileged and what is discoverable.  This will impede Defendants' ability to conduct discovery.  Even if the Court finds no prejudice to Defendants, the Court can disqualify Mr. Blanton because his representation would harm the public interest or give the appearance of impropriety.

Defendants also argue that Rule 3.7 does not apply only to trial counsel and the rule is not limited to jury trials.  For purposes of the witness-advocate rule, the "trial" includes the entire litigation process, particularly discovery.  Mr. Blanton cannot take depositions because the transcripts may be used at trial and his identity as Plaintiffs' counsel would be revealed. Mr. Blanton himself will likely be deposed and his deposition may be used in a motion for summary judgment or other pretrial motions, forcing Defendants to question the credibility of an officer of the court.

Finally, Defendants urge the Court to revoke Mr. Blanton's pro hac vice status.  He is the president of Royal Travel, and he and his wife are the only board members and shareholders.  [Exh. B to Farm Decl.]  Insofar as Royal Travel holds and rents real estate in Hawaii, and he represents Royal

9

Travel's interests as a member of the AOAO Board, Mr. Blanton is engaged in regular business in Hawaii.  At the very least, Mr. Blanton should have disclosed these facts in his pro hac vice application.

<u>**DISCUSSION**</u>

"Every member of the bar of this court . . . shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar." Local Rule LR83.3.  Attorneys who practice in the Hawaii state courts must comply with the Hawaii Rules of Professional Conduct. <u>See</u> Rules of the Supreme Court of the State of Hawaii Rule 2.2. An attorney who is admitted to practice pro hac vice in this district court "is subject to the jurisdiction of the court with respect to the attorney's conduct to the same extent as a member of the bar of this court."  Local Rule LR83.1(e)5.

**I.   <u>Eligibility for Admission Pro Hac Vice</u>**

Local Rule 83.1(e) states, in pertinent part:

Unless authorized by the Constitution of the United States or Acts of Congress, an attorney is not eligible to practice pursuant to this section if any one or more of the following apply:

1.  the attorney resides in Hawaii;

2.  the attorney is regularly employed in Hawaii; or

3.  the attorney is regularly engaged in business, professional, or law-related activities in Hawaii.

10

At the hearing on the Motion, Mr. Blanton stated that he lives in Hawaii approximately four months out of every year.  Insofar as Mr. Blanton lives in Hawaii for a substantial amount of time on an annual basis, this Court finds that he resides in Hawaii for purposes of Local Rule 83.1(e)1.  Mr. Blanton is therefore ineligible for admission pro hac vice.[3]

The Court could grant Defendants' Motion on this basis alone.  For the sake of completeness, however, the Court will also address Defendants' argument that Mr. Blanton should be disqualified because he is a necessary witness in this case.

## II.  **Mr. Blanton as a Witness**

Hawaii Rule of Professional Conduct 3.7(a) provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

The comments to Rule 3.7 state that

paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party.  Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the

---

[3] In light of this Court's ruling, it need not address the issue whether Mr. Blanton's involvement with Royal Travel constitutes regularly engaging in business activity in Hawaii.

11

probability that the lawyer's testimony will
conflict with that of other witnesses.  Even if
there is risk of such prejudice, in determining
whether the lawyer should be disqualified due
regard must be given to the effect of
disqualification on the lawyer's client.  It is
relevant that one or both parties could reasonably
foresee that the lawyer would probably be a
witness. . . .

Haw. R. Prof. Cond. 3.7 cmt. 4.

Rule 3.7(a) prohibits lawyers from acting as both
advocate and witness because, *inter alia*, "[i]t may not be clear
whether a statement by an advocate-witness should be taken as
proof or as an analysis of the proof."  Haw. R. Prof. Cond. 3.7,
cmt. 2.  Nothing in the rule or its commentary limits the rule's
application to jury trials.  Further, the confusion caused by an
attorney's dual roles is not limited to live testimony at trial.
A trial is "connected as a seamless web to the ascertainment of
issues at the pretrial proceedings, and particularly to the
discovery depositions." Gen. Mill Supply Co. v. SCA Servs.,
Inc., 697 F.2d 704, 716 (6th Cir. 1982).  The evidence admitted
at trial may include depositions that the attorney participated
in or declarations and affidavits that he prepared.

The Court acknowledges that some courts have
interpreted rules identical to Haw. R. Prof. Cond. 3.7(a) to
apply only to the actual trial.  See, e.g., Caplan v. Braverman,
876 F. Supp. 710, 711 (E.D. Pa. 1995) (applying Penn. R. Prof.
Cond. 3.7(a)).  This Court, however, has previously ruled that

12

Rule 3.7 also applies to pretrial proceedings, finding that
disqualification for the trial proceedings alone is insufficient
to remedy the conflict between the attorney's role as advocate
and witness and could result in a prejudicial substitution of
counsel immediately before trial.  See Opuna, LLC, et al. v.
Sabbagh, et al., CV 05-00488 SOM-LEK, Order Granting Defendant's
Motion to Disqualify Jerry A. Ruthruff as Counsel for Opuna LLC,
filed 4/17/06 (dkt. no. 73) ("Disqualification Order"), at 14 &
n.4.[4]  This Court therefore finds that, if Mr. Blanton is to be
disqualified as Plaintiffs' counsel, such disqualification should
also apply to pretrial proceedings.

        Based on the pleadings in this case and the parties'
representations in connection with this Motion, this Court finds
that Mr. Blanton will likely be a necessary witness in this case
and his testimony is likely to conflict with the testimony of
Defendants' witnesses.  Defendants may be prejudiced by
Mr. Blanton's continued representation of Plaintiffs because his
status as counsel and witness may unduly complicate discovery and

_____

        [4] In Opuna, the district judge vacated the Disqualification
Order when she remanded the case to state court.  The district
judge's order, however, stated that she was vacating the
Disqualification Order only because the state court should not be
bound by the federal court's nonjurisdictional rulings.  See
Opuna, Order Remanding Case; Vacating Magistrate Judge's Order
Granting Defendant's Motion to Disqualify Jerry A. Ruthruff as
Counsel for Opuna, LLC; Denying Defendant's Request to Strike
Larry White's Declaration in Support of Motion to Remand; and
Denying Defendant's Request for Rule 11 Sanctions, filed 8/15/06
(dkt. no. 125), at 21-22.

his dual role may create an improper inference that his testimony is more credible than that of Defendants' witnesses.  The Court further finds that the potential prejudice to Plaintiffs is minimal.  Mr. Grimmer and Mr. Oberrecht are able attorneys who are more than capable of handling this case.  Further, this case is in its early stages, giving Mr. Grimmer and Mr. Oberrecht ample time to assume any duties currently handled by Mr. Blanton.  Plaintiffs primarily argue that Mr. Blanton has unique factual knowledge of the case and that they will incur additional costs if Mr. Blanton is immediately disqualified.

Even if Mr. Blanton is disqualified, he can still share his factual knowledge with Plaintiffs' counsel as a witness and as a client representative for Royal Travel.  The Court acknowledges that Mr. Blanton is providing his legal services to Plaintiffs pro bono and he resides on the island of Hawaii for part of the year.  Plaintiffs will therefore incur higher attorney's fees and expenses if Mr. Blanton is disqualified.  Plaintiffs' additional costs, however, do not outweigh the potential harm to Defendants which may result from Mr. Blanton's continued representation of Plaintiffs.  In Opuna, this Court found that Opuna's financial burden in retaining new counsel did not outweigh the potential prejudice to the defendants even though Mr. Ruthruff was the only counsel of record for Opuna.  See Opuna, Disqualification Order at 15-16.

Finally, the fact that Plaintiffs should have foreseen the instant conflict and the Court's interest in obtaining unbiased and objective testimony at all stages of the litigation both weigh in favor of disqualification.  Having considered all of the relevant factors, this Court finds that Mr. Blanton is disqualified from Plaintiffs' representation pursuant to Hawaii Rule of Professional Conduct 3.7(a).  Defendants' Motion is therefore GRANTED.  The Court, however, emphasizes that there is no allegation, nor any evidence, of improper action or unprofessional conduct on Mr. Blanton's part.  Indeed, Defendants' counsel noted that Mr. Blanton has conducted himself in the most upright and courteous fashion throughout this litigation.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Disqualify Attorney J. Charles Blanton as Counsel for Plaintiffs and to Revoke His *Pro Hac Vice*, filed January 30, 2009, is HEREBY GRANTED.

The Court HEREBY DIRECTS the Clerk's Office to return Mr. Blanton's pro hac vice filing fee to Plaintiffs by no later than **March 31, 2009**, unless Plaintiffs appeal this order to the district judge.  If Plaintiffs do file an appeal, whether and when the fee is returned will depend upon the district judge's ruling.

15

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 12, 2009.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**ROYAL TRAVEL, INC. V. SHELL MANAGEMENT HAWAII, INC., ET AL; CIVIL NO. 08-00314 JMS-LEK; ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY ATTORNEY J. CHARLES BLANTON AS COUNSEL FOR PLAINTIFFS AND TO REVOKE HIS PRO HAC VICE**